IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TRINA MAY ASH,

                    Plaintiff,

v.                                                    Civil Action No. 2:13-CV-47

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.

## REPORT AND RECOMMENDATION

## I.  INTRODUCTION

**A. Background**

On July 16, 2013, Trina May Ash filed this claim under 42 U.S.C. §§ 405(g) for judicial for review of the decision of the Commissioner of Social Security that denied her claim for disability insurance benefits ("DIB") under Titles II of the Social Security Act. 42 U.S.C. §§ 401-433.[1] The Commissioner filed her Answer on September 25, 2013.[2] Ms. Ash then filed her Motion for Summary Judgment on October 28, 2013,[3] and the Commissioner filed her Motion for Summary Judgment on November 22, 2013.[4] Ms. Ash filed a Response to Commissioner's Motion for Summary Judgment on December 2, 2013.[5] The motions are now ripe for this Court's review, and for this report and recommendation.

---

[1] Docket No. 1.

[2] Docket No. 7.

[3] Docket No. 10.

[4] Docket No. 12.

[5] Docket No. 14.

**B. The Pleadings**

    1. Ms. Ash's Motion for Summary Judgment and Memorandum in Support.

    2. Commissioner's Motion for Summary Judgment and Memorandum in Support.

**C. Recommendation**

    I recommend that:

1.     Ms. Ash's Motion for Summary Judgment be **GRANTED** because the Administrative Law Judge ("ALJ") did not properly evaluate the borderline age situation pursuant to 20 C.F.R. § 404.1563(b); and, therefore, her decision was not based on substantial evidence.

2.     Commissioner's Motion for Summary Judgment be **DENIED** for the reasons set forth.

3.     The case be **REMANDED** so that the ALJ may appropriately address Ms. Ash's borderline age.

## II. FACTS

**A. Procedural History**

On September 24, 2010, Ms. Ash applied for DIB alleging an onset of disability of September 17, 2010, due to gastroparesis, diabetes, restless leg syndrome, and high blood pressure. (R. 122, 148.) The application for benefits was initially denied on December, 20, 2010, and upon reconsideration on April 6, 2011. (R. 63-64.) Ms. Ash requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 22, 2012. (R. 27-62.) Ms. Ash, who was represented by a non-attorney representative appeared and testified at the hearing, as did an impartial vocational expert. (*Id*.) On April 19, 2012, the ALJ issued an unfavorable decision finding that Ms. Ash was

not disabled because, although she has several severe impairments, there are jobs existing in significant numbers in the national economy that she can still peform. (R. 9-22.) On May 1, 2012, Ms. Ash appealed this decision to the Appeals Council and submitted additional evidence for review. (R. 1-8.) On May 20, 2013, the Appeals Council denied review. (R. 1-6). Ms. Ash then timely brought her claim to this Court.

**B. Personal History**

Ms. Ash was born on October 3, 1962, making her 47 years old on the alleged disability onset date and 49 years old on the date of the ALJ's decision. Ms. Ash reported that she only completed the eighth grade in school, but that she was not in any special education classes. (R. 148-49.) She also reported that she could understand, read, and write English. (R. 147.) Ms. Ash worked for thirty years, from 1980 to 2010, as a nurse assistant and home health aide. (R.149.)

**C. Medical History**

The undersigned has reviewed all of the medical evidence in the record. However, because the sole issue on appeal is whether the ALJ properly considered the borderline age situation at step five of the analysis, the determinations of Ms. Ash's impairments and RFC are not at issue. Accordingly, very little of the medical evidence is material to the parties' claims. Any relevant medical evidence will be discussed below in relation to the parties' arguments.

**D. Testimonial Evidence**

Ms. Ash testified that she was 49 years old and that her date of birth was October 3, 1962. (R. 35.) She testified that she went as far as the eighth grade in school and never got a GED, but that she completed a Certified Nursing Assistant certification course. (R. 36-37.) Regarding her difficulties with basic reading and math, Ms. Ash testified a follows:

Q. Any difficult with knowing how to read and write?
A. Sometimes.
Q. Okay. In what way?
A. Sometimes I don't know what half the words mean, the larger words. And my spelling, my writing is not the best.
Q. All right. When you say sometimes I don't know what the larger words mean, are there times when you do know what the bigger words mean?
A. No. The simple words I know, yes.
Q. Okay. So it's the larger words that cause trouble?
A. Yes.
Q. All right. Are you able usually to read the newspaper?
A. Not all the way.
Q. How about basic math?
A. No.
Q. Can you add and subtract?
A. Yes.
Q. Can you multiply and divide?
A. Not very good.
Q. Can you count money?
A. Yes.
Q. Can you count change?
A. Yes.
Q. So if I put a whole bunch of coins out on the table and asked you to make $.58 you could do that?
A. Yes.
Q. Okay. When you go to the store you know about how much you're going to get back?
A. Yes.

(R. 37-38.)

The ALJ also heard testimony from a vocational expert ("VE"). The VE classified Ms. Ash's past work as a nurse assistant as "exertional level is medium. The skill level is semi-skilled, SVP 4." He classified her past work as a home health aide as "exertional level is medium, skill level is semi-skilled, SVP 3." The ALJ asked the VE to

assume an individual with the same age, education, and work background as claimant, who is capable of performing light work as defined in the regulations with the following limitations: Requires a sit/stand option, which would allow her to change

4

> position briefly every thirty minutes without going off task. There
> should be no crouching, no crawling, no climbing ladders, ropes or
> scaffolds. No overhead reaching. No more than occasional
> balancing, stooping, kneeling, climbing of stairs or ramps. Must
> avoid concentrated exposure to extreme heat and cold. Must avoid
> even moderate exposure to respiratory irritants such as fumes, dust,
> odors, gases, and poor ventilation. Must avoid all exposure to
> hazards such as unprotected heights, dangerous moving machinery.

(R. 58-59.) The VE testified that such a person would not be able to perform the claimant's past

work, but that there were numerous other occupations that such an individual could perform in

the national and local economies. (R. 59.) The ALJ then asked the VE to imagine a person with

the same restrictions except with an exertional level of sedentary. The VE testified that there

were numerous jobs that such an individual could perform, even if the individual was even

further limited to simple, routine, and repetitive tasks. (R. 59-60.)

### III. ALJ FINDINGS

In determining whether Ms. Ash was disabled, the ALJ followed the five-step sequential

evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that Ms.Ash had

not engaged in substantial gainful activity since September 17, 2010, the alleged onset date of

disability. At step two, the ALJ found that Ms. Ash had the following severe impairments: diabetes

mellitus; diabetic gastroparesis; chronic obstructive pulmonary disease/asthmatic bronchitis;

avascular necrosis of the left hip; degenerative disc disease and facet arthritis of the lumbar spine;

white matter changes to the brain; migraines; and mild degenerative joint disease of the right

glenohumeral joint. and morbid obesity. At the third step, the ALJ found that none of Ms. Ash's

impairments meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1. In order to consider step four of the process, the ALJ determined that

Ms. Ash now has the following RFC:

to perform a range of work activity that requires no more than a sedentary level of physical exertion; affords a sit/stand option allowing the person to change position briefly every 30 minutes without going off-task; requires no more than occasional balancing, stooping, kneeling, or climbing of stairs or ramps; requires no overhead reaching; accommodates the use of a cane while walking; avoids concentrated exposure to extreme heat and cold; avoids even moderate exposure to respiratory irritants such as fumes, dusts, odors, gases, and poor ventilation; avoids all exposure to hazards such as unprotected heights and dangerous moving machinery; and is limited to simple, routine and repetitive tasks.

In step four, the ALJ found that Ms. Ash is unable to perform any past relevant work. At step five, the ALJ found that based on Ms. Ash's age, education, work experience, and RFC, she is cable of making an adjustment to work that exists in significant numbers in the national economy. Accordingly, the ALJ found that Ms. Ash was not disabled.

## IV.  THE MOTIONS FOR SUMMARY JUDGMENT

### A. Contentions of the Parties

Ms. Ash contends that the ALJ erred in step five of the sequential process by failing to address whether she should have been classified as a person closely approaching advanced age (age 50-54) rather than as a younger person (under age 50) for purposes of applying the Medical-Vocational Guidelines ("Grids"). Ms. Ash argues that this matter must be remanded to the Commissioner for a determination of what age category should apply in this case. The Commissioner contends that substantial evidence supports the ALJ's use of Ms. Ash's chronological age in applying the grids at step five.

### B. The Standards

*1. Summary Judgment*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## 2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

**C. Discussion**

Once the ALJ determines at step four of the sequential process that a claimant can no longer perform her past relevant work, the burden shifts to the Commissioner to show that the claimant is capable of making an adjustment to other work given the claimant's RFC and the vocational factors of age, education, and work experience. 20 C.F.R. § 404.1520(g). One of the ways in which this burden can be met is through use of the Grids, which "take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional capacity." *Grant v. Schweiker*, 699 F.2d 189, 191-92 (4th Cir.1983); *see* 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, §§ 200.00-204.00 (2006). "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." Pt. 404, Subpt. P, App.2, § 200.00(a). However, the grids do not take into account a claimant's non-exertional limitations. *Grant v. Schweiker*, at 192. Thus, when a claimant has both exertional and non-exertional limitations, the ALJ must first determine whether the claimant is disabled under the grids based on strength limitations alone; and, if the grids direct a finding of not disabled, "the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." Pt. 404, Subpt. P, App.2, § 200.00(e)(2).

Here, the ALJ determined Ms. Ash's vocational profile as follows: (1) she could perform no more than a sedentary level of physical exertion; (2) she was "appropriately considered for decision

purposes" a younger individual; (3) she has a limited education and is able to communicate in English; and (4) "transferability of jobs is not material to the determination of disability because using the [grids] as a framework supports the finding that the claimant is not disabled, whether or not the claimant has transferable job skills." Applying the grids using this profile, the ALJ found that Medical-Vocational Rule 201.19 (age: younger individual; education: limited or less; previous work experience: skilled or semiskilled–skills not transferable) would direct a finding of not disabled if Ms. Ash could perform the full range of sedentary work. The ALJ determined, however, that Ms. Ash's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." Consequently, the ALJ did not rely on the grids, but instead relied on the testimony of a vocational expert to conclude "that, considering [Ms. Ash's] age, education, work experience, and residual functional capacity, [Ms. Ash] is capable of making a successful adjustment to work that exists in significant numbers in the national economy." The central issue on appeal is whether the ALJ erred in this step five determination by not properly considering whether to use Ms. Ash's next higher age rather than her chronological age.

In determining a claimant's age, the Regulations establish three chronological age categories: (1) younger person (under age 50); (2) person closely approaching advanced age (age 50-54); (3) person of advanced age (age 60 or older). 20 C.F.R. § 404.1563(c)-(e). However, in a borderline age situation, the Regulations also provide that the ALJ "will not apply the age categories mechanically in a borderline situation," but will instead "consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." 20 C.F.R. § 404.1563(b). Ms. Ash contends that a borderline age situation existed because she was 5 months from age 50 on the date of the ALJ's decision; but, the ALJ erred by mechanically determining that she was a

younger person, rather than considering whether to classify her as a person closely approaching advanced age. The Commissioner argues that Ms. Ash did not present a borderline situation, but even assuming a borderline age situation existed, substantial evidence supports the ALJ's decision to use Ms. Ash's chronological age at step five. Thus, the issues before the Court are (1) is this a borderline age situation; and (2) if so, did the ALJ properly consider whether to classify Ms. Ash as a person closely approaching advanced age.

*1. Whether a Borderline Situation Exists*

The first issue is whether a borderline situation exists, given that Ms. Ash was just over five months away from reaching age 50, which is considered a person closely approaching advanced age, on the date of the ALJ's decision. To determine whether a borderline age situation exists, the Council adopted the following two-part test:

> To identify borderline age situations when making disability determinations, adjudicators will apply a two-part test: (1) determine whether the claimant's age is within a few days to a few months of a higher age category; (2) if so, determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled."
>
> If the anser to one or both is "no," a borderline age situation either does not exist or would not affect the outcome. The adjudicator will then use the claimant's chronological age.
>
> If the answer to both is "yes," a borderline age situation exists and the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age. (Use of the higher age category is not automatic.)

HALLEX II-5-3-2 (S.S.A.), 2003 WL 25498826.

In identifying whether an individual is "within a few days to a few months of a higher age category" there are "no fixed guidelines...since such guidelines would themselves reflect a

mechanical approach." SSR 83-10. A review of case law indicates that, generally, claimants who are within six months from the next age category are routinely considered borderline. *See Barrett v. Apfel*, 40 F.Supp.2d 31, 39 (D.Mass.1999) (collecting cases holding that up to 6 months can qualify); *Roush v. Heckler*, 632 F.Supp. 710 (S.D.Ohio 1985) (6 months was borderline case)*; Bush v. Astrue*, 2008 WL 867941, at *5-6 (S.D.W.Va. Mar. 28, 2008) (collecting cases). The Commissioner argues that courts often find that no borderline age situation exists when claimants are closer to the next age category than Ms. Ash is in this case. However, in the three cases that the Commissioner cites to support this assertion, the court actually held that *even though a borderline situation existed*, the ALJ did not err in using the claimant's chronological age. *See Bowie v. Comm'r*, 539 F.3d 395 (6th Cir. 2008) (finding that there was no dispute that the plaintiff presented a borderline age situation, but affirming the district court's grant of summary judgment to the Commissioner because substantial evidence support ALJ's decision to use the plaintiff's chronological age); *Lockwood v. Comm'r*, 616 F.3d 1068 (9th Cir. 2010) (finding that "the ALJ satisfied the requirement that she *consider* whether to use the older age category"); *Van Der Maas v. Comm'r*, 198 Fed.Appx. 521 (6th Cir. 2006) (same). Accordingly, the undersigned finds that Ms. Ash's age was "within a few days to a few months" on the date of the ALJ's decision. Further, assuming that Ms. Ash has no transferable job skills, using the next higher age category in applying the grids would have directed a finding of disabled pursuant to Rule 201.10.[6]

---

[6]The ALJ did not make any findings regarding the previous work experience vocational factor "because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills." While this may be true, when using the next higher age in applying the grids, previous work experience is of critical importance. For an individual with Ms. Ash's other vocational factors-- sedentary RFC, closely approaching advanced age, and limited or less education--Rule 201.10 directs a finding of disabled if the individual's prior work experience is "skilled or semiskilled-skills not transferable," while Rule 201.11 directs a finding of not disabled if the individual's prior work experience is "skilled or semiskilled-skills transferable." However, the ALJ used Rule 201.19, which applies when an individual's previous work experience is "skilled or semiskilled-skills not transferable," as a framework later in her decision, and there is VE testimony on the

*2. Whether the ALJ Properly Considered Whether to Use the Next Higher Age Category*

Having found that a borderline situation likely existed, the next question is whether substantial evidence supports the ALJ's decision to use Ms. Ash's chronological age, rather than the next higher age. In a borderline age situation, the Regulations promise claimants that the ALJ will not apply the age categories mechanically, but will instead "consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case." 20 C.F.R. § 404.1563(b). To decide whether to use the claimant's chronological age or the next higher age, the Social Security Administration has adopted a "sliding scale" approach whereby "the claimant must show progressively more additional vocational adversity(ies)–to support use of the higher age–as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens." HALLEX II-5-3-2 (S.S.A.), 2003 WL 25498826. "One finds additional vocational adversity(ies) if some adjudicative factor(s) is relatively more adverse when considered in terms of that factor's stated criteria, or when there is an additional element(s) which has adverse vocational implications." *Id*.; *see also* SSA's Program Operations Manual System ("POMS") DI 25015.005, Age as a Vocational Factor, https://secure.ssa.gov/poms.nsf/lnx/0425015005 (last visited April 8, 2014) ("Additional vocational adversities are aspects of the claimant's RFC, education, or work experiences that are not completely accounted for by the vocational rule you use for your determination. These additional vocational adversities could be any factor that affects, but does not significantly erode the occupational base you use as a framework for your determination."). In the borderline age context, an additional vocational adversity is some factor, other than age, which

---

record indicating that Ms. Ash's past work was at the semi-skilled level. Thus, Court will assume for the purposes of discussion that Ms. Ash's previous work experience is no more than "skilled or semiskilled-skills not transferable." Upon remand, the Commissioner will be able to make the appropriate findings.

renders the claimant relatively less able to make an adjustment to other work than an individual in the next higher age category who is nonetheless conclusively presumed disabled under the grids.[7]

While the law is relatively clear on *what* the ALJ is to consider in deciding whether to veer from a claimant's chronological age in a borderline situation, the law regarding the ALJ's duties in considering such a situation is muddled. The Commissioner is correct that the regulations impose no procedural requirement to make specific findings in borderline situations. However, the regulatory guidance is inconsistent on this issue. *Compare* HALLEX II-5-3-2 (S.S.A.), 2003 WL 25498826 ("Absent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age-even when the time period is only a few days. *The adjudicator need not explain his or her use of the claimant's chronological age*.") (emphasis added); *with* POMS DI 25015.005 ("When a borderline age situation exists, you must explain your decision to use the next higher age category or your decision to use the claimant's chronological age and explain the specific factors supporting your determination.").

As for case law, there is a split of authority as to what extent the ALJ must explicitly acknowledge and analyze a borderline age situation in her written decision. The Eighth, Third, and Tenth Circuits have found that the ALJ must provide some explanation of her age categorization, or at least an acknowledgment of the borderline age situation, in order for the Court to perform a review of the decision. *See Phillips v. Astrue*, 671 F.3d 699, 707 (8th Cir.2012); *Lucas v. Barnhart*, 184 Fed.Appx. 204, 208 (3rd Cir.2006); *Daniels v. Apfel*, 154 F.3d 1129, 1133, n.5 (10th Cir.1998).

---

[7] Under the grids, an individual theoretically has the RFC to perform the full range of the unskilled occupations underlying each table. However, the individual may not be able to adjust to those jobs because of adverse vocational factor(s), *e.g.* limited education, nontransferable job skills, or advancing age. Thus, a finding of disabled under the grids represents an administrative evaluation that a claimant with those particular vocational adversities is not able to adjust to other unskilled work. Because the grids fully account for the relative adversities of a claimant's vocational factors, an additional vocational adversity is some factor that is not already accounted for in that administrative evaluation. *See* SSR 83-10.

However, the Ninth, Sixth, and Eleventh Circuits have rejected such a *per se* procedural requirement. *See Lockwood v. Commissioner of Social Security Administration*, 616 F.3d 1068, 1071-1072 (9th Cir.2010)*; Bowie v. Commissioner of Social Security*, 539 F.3d 395, 399 (6th Cir.2008); *Miller v. Commissioner of Social Security*, 241 Fed.Appx. 631, 635 (11th Cir.2007). The Fourth Circuit has not addressed the issue, but most courts within the Fourth Circuit have found that the borderline age analysis must be explicit in order for the reviewing court to determine if the decision was based on substantial evidence. *See, e.g. Pickett v. Astrue,* 895 F. Supp. 2d 720, 724-25 (E.D. Va. 2012) (remanding because "[t]he greater weight of authority leads to the conclusion that the ALJ's failure to explicitly address the borderline age issue provides [an] insufficient basis for review"); *France v. Apfel*, 87 F. Supp. 2d 484 (D. Md. 2000); *Hofler v. Astrue*, 2013 WL 442118 (E.D. Va. Jan. 9, 2013); *Harris v. Astrue*, 2012 WL 6761333 (D.S.C. Dec. 5, 2012); *Brown v. Astrue*, 2009 WL 890116, at *12 (D.S.C. Mar. 30, 2009); *Bush v. Astrue*, 2008 WL 867941 (S.D.W. Va. Mar. 28, 2008).

Although there is no clear consensus on this issue, a review of the case law indicates that the extent to which the ALJ is required to provide analysis and make express findings in borderline age situations often depends on whether additional vocational adversities exist in the record. Where there is clearly no evidence in the record suggesting the presence of any additional vocational adversities, a reviewing court may still be able to conclude that the ALJ's decision to deny benefits is supported by substantial evidence despite its lack of an explicit discussion regarding the proper age categorization. *See, e.g. Bowie*, 539 F.3d at 402 (holding that the ALJ's disability determination was supported by substantial evidence even though it lacked an explicit discussion of borderline age because there was "simply no evidence in the record that [the claimant] suffered from any

'additional vocational adversities' that might justify placing her in the next higher age category"). In contrast, where at least one additional vocational adversity appears in the record, the ALJ's failure to explain the decision to use the claimant's chronological age often makes meaningful review of that decision impossible. *See, e.g. Lewis v. Colvin*, 2013 WL 1283837 (E.D. Mo. Mar. 27, 2013) ("Because additional vocational adversities are present in this cause, namely, the presence of additional and significant non-exertional impairments which infringe upon plaintiff's occupational base, as determined by the plaintiff's RFC and as testified to by the vocational expert, the ALJ was required to consider whether plaintiff should be classified as a person "closely approaching advanced age."); *cf. Hofler* ("The Court finds unpersuasive Defendant's argument that Mr. Hoffler's lack of vocational adversities, as well as the ALJ's consultation of a vocational expert, shows the ALJ properly applied the Grids as guided by the Social Security Rulings, HALLEX, and POMS."). Even the Court in *Bowie*, which flatly rejected a requirement for the ALJ to explicitly discuss a borderline age issue, acknowledged that the "lack of an explanation may in some cases mean that the ALJ's ultimate decision is not supported by sufficient evidence." *Bowie*, 539 F.3d at 400-01.

Here, Ms. Ash argues that she has at least two additional vocational adversities–significant non-exertional limitations and limited education–justifying a discussion of whether to use the next age category. While Ms. Ash acknowledges that the ALJ was not required to apply the next higher age category, she argues that because evidence of these factors appears in the record, the ALJ erred by not discussing the issue. The Commissioner argues that "[b]ecause no additional vocational adversities were present, the ALJ was not required to discuss her decision to apply Plaintiff's chronological age."

As noted above, the undersigned agrees that "where there is no evidence of additional vocational adversities or any other consideration that might justify use of a higher age category-and indeed evidence to the contrary-it is not difficult to conclude that the ALJ's benefits decision is supported by substantial evidence despite its lack of an explicit discussion regarding age categorization." *Bowie*, 539 F.3d at 402. However, the undersigned rejects the Commissioner's contention that no additional vocational adversities are present in this case. The ALJ specifically found that Ms. Ash had significant non-exertional limitations, which may be additional vocational adversities. *See, e.g. Manning v. Colvin*, 2014 WL 266417 (N.D. Tex. Jan. 24, 2014) (holding that the ALJ's finding that the claimant's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations...underscores the importance of the age classification in this case and suggests that [the claimant] may have had additional vocational adversities that cut in favor of applying the older age category"). In fact, POMS DI 25015.005 provides, *inter alia*, the following examples of factors that an ALJ may consider to be additional vocational adversities: (1) Frequent postural limitations, as frequent is a limitation; (2) Frequent stooping limitations for a claimant with a sedentary RFC; (3) No overhead reaching for a claimant with a sedentary RFC; (4) Environmental limitations that do not substantially reduce the remaining occupational base, such as avoiding exposure to unprotected heights. Here, the ALJ expressly found that Ms. Ash had *all* of these limitations in her RFC determination. Thus, because at least one

additional vocational adversity is clearly present in this case,[8] "some discussion of proper age categorization [was] merited in order to meet the substantial evidence test." *Bowie*, 539 F.3d at 401.

The Commissioner also argues that the ALJ's decision to use Ms. Ash's chronological age is nonetheless supported by substantial evidence because the ALJ "explicitly considered all of Plaintiff's proven nonexertional limitations in finding that she was disabled" and "consulted a vocational expert regarding the impact of Plaintiff's additional limitations." Therefore, the Commissioner contends, "although no[t] explicitly discussed in her decision, it is evident that [ALJ] found that [Ms. Ash's] limitations did not constitute an additional vocational adversity warranting the application of the next higher age category in this case." However, it is not at all evident to the undersigned what findings the ALJ made and whether those finding are supported by substantial evidence because the ALJ omitted any discussion of the issue from her written decision. The determination that Ms. Ash's non-exertional limitations do not preclude her from performing a significant number of sedentary jobs in the national economy given her vocational profile (including being a "younger person") is vastly different from a determination that Ms. Ash's ability to adjust to that work in light of her non-exertional limitations is more like that of a "younger individual" than that of an "individual closely approaching advanced age." *See Lucas v. Barnhart*, 184 Fed.Appx. 204, 207 (3rd Cir. 2006) ("Even if factually related, the issue of ability to adjust as an adjunct of age

---

[8]There may be more additional vocational adversities in Ms. Ash's case. For example, previous work experience may be an additional vocational adversity when the claimant's "only work was at the lowest end of the semi-skilled work (SVP 3) when the applicable rules involve skilled/semi-skilled work." POMS DI 25015.005. However, as noted above the ALJ failed to make any factual findings regarding Ms. Ash's previous work experience. Ms. Ash also notes in her motion that the Appeals Council incorporated into the record evidence showing that as of the date of the ALJ's decision, she was using oxygen 24 hours per day. This too may qualify as an additional vocational adversity. The Court merely notes that at least one adversity clearly exists in the record. "Whether additional vocational adversity is present and, if so, what period between the claimant's chronological age and attainment of the next higher age category is supported requires sound adjudicative judgment." *Id*. On remand, the Commissioner can make the factual findings required to determine whether any other additional vocational adversities exist.

is legally and analytically distinct from the inquiry into whether one can perform a significant number of...jobs in the national economy.").

Moreover, "[t]he ALJ's reliance on the vocational expert's testimony...is not sufficient to overcome [her] failure to explicitly consider whether the older age category is more appropriate." *Crawford v. Barnhart*, 556 F. Supp. 2d 49, 54-55 (D.D.C. 2008); *see also Pickett v. Astrue*, 895 F. Supp. 2d 720, 724-25 (E.D. Va. 2012) ("The testimony of a vocational expert does not absolve the ALJ of [her] obligation...[to] provide some actual analysis explaining [her] decision to apply the claimant's chronological age instead of the higher age category."). Here, the ALJ did not address the issue of borderline age in her colloquy with the VE. Instead the ALJ asked the VE to assume at all times an individual of Ms. Ash's age. Nor did the ALJ state in her decision that she relied on the VE's testimony, or any other evidence, in making the age categorization determination. "The mere fact that the ALJ consulted a vocational expert-which was required due to Plaintiff's nonexertional limitations rendering the Grid rule nondispositive-does not automatically prove that the ALJ did not apply the Grid mechanically regarding Plaintiff's age category." *Anderson v. Astrue*, 2011 WL 2416265 (N.D. Ill. June 13, 2011)

Similarly, the Commissioner argues that Ms. Ash's educational limitations are not significant enough to warrant the use of the next higher age category. Here, there is evidence in the record that Ms. Ash has educational limitations because she only finished the 8th grade and has difficulties reading. The question of whether these limitations warranted the application of the next higher age category is not a question for this Court. The Commissioner also appears to contend that because the jobs underlying the grids are unskilled, educational limitations are not vocational adversities. This argument is contrary to the Commissioner's own guidance, which states that [t]he adjudicator

should consider whether education may be an additional vocational adversity if the individual has an education at the lower end of the rule continuum." *See* POMS DI 25001.001. The grids clearly reflect the principle that the older an individual is the more likely it is that her educational limitations will affect vocational adjustment--even to unskilled jobs. *See* Pt. 404, Subpt. P, App.2, § 201.00(g) (stating that for individuals approaching advanced age, "even a high school education or more would have little impact for effecting a vocational adjustment unless relevant work experience reflects use of such education").

The Commissioner is essentially asking the Court to weigh the evidence and decide whether it is more appropriate to use the higher age category or Ms. Ash's chronological age. This the Court cannot do. It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. The scope of this Court's review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary. *Hayes v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, the undersigned is unable to determine how or why the ALJ decided to apply the Ms. Ash's chronological age category instead of the higher age category, or whether the ALJ even considered the issue as required by 20 C.F.R. § 404.1563(b). "Indeed, a mere statement by the Commissioner that [she] considered the borderline situation would likely suffice." *Phillips*, 671 F.3d, at 706. However, here, the issue is absent from the ALJ's written decision, making review by this Court impossible.

## IV.  RECOMMENDATION

In sum, because the ALJ provided absolutely no discussion of the borderline age situation in her decision–not even to acknowledge that it existed–it is impossible for the undersigned to

determine what conclusions, if any, the ALJ reached after considering whether to use the next higher age category. In fact, considering that the ALJ did not make the factual findings necessary to determine whether using the next higher age category would have even directed a finding of disabled in Ms. Ash's case, is not clear from the record whether the ALJ realized that a borderline situation existed. Under these circumstances, the undersigned cannot find that substantial evidence supports the ALJ's decision, and **RECOMMENDS THAT**:

1.     Ms. Ash's Motion for Summary Judgment be **GRANTED**.

2.     Commissioner's Motion for Summary Judgment be **DENIED** for the reasons set forth.

3.     The case be **REMANDED** for further consideration consistent with this opinion.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).


DATED: April 15, 2014                                   /s/ *James E. Seibert*
                                                        JAMES E. SEIBERT
                                                        UNITED STATES MAGISTRATE JUDGE